T. M. GALBREATH v. C. M. CONDON.

1. CONTRACT—*Breach*—*Evidence.* Where, by the terms of a written contract for the sale of corn, to be delivered on the railroad track at Altamont, Labette county, evidence that the corn arrived at Memphis, Tenn., where the purchaser resided, in a damp, wet and damaged condition does not support a claim for damages under the contract for shipping inferior corn.

2. DAMAGES—*Action, not Maintained.* When a contract for the sale of corn, consisting of a letter from the seller to a broker, authorizing the broker to sell 15 car-loads good mixed corn, and on account of wet weather the grade will not be guaranteed, which letter is shown to the purchaser, and a telegram from the broker to ship as per letter, the corn to be delivered on the railroad track at Altamont, Labette county, for shipment to Memphis, Tenn., the purchaser cannot maintain an action for damages because the corn was not grade No. 2 according to the Memphis inspection.

*Error from Labette District Court.*

THE opinion states the material facts.

*J. H. Morrison,* for plaintiff in error.
*Case & Glasse,* for defendant in error.

Opinion by SIMPSON, C.: The plaintiff in error complained in his amended petition that one F. H. Ellis, being a broker in the grain market, in the city of Memphis, in the state of Tennessee, was authorized by the defendant in error to sell in that market on account of the defendant in error 15 cars of

mixed corn, at a price not less than 40 cents per bushel, to be delivered to the purchaser on board the cars at the town of Altamont, Labette county; that afterward Ellis, representing that he was authorized by the defendant in error so to do, sold to the plaintiff in error 15 car-loads of mixed corn, subject to inspection, and to be grade No. 2. A memorandum of said sale was made in writing, as follows:

"F. H. ELLIS, PROVISION, GRAIN AND FLOUR BROKER,
No. 7. MADISON ST.
MEMPHIS, TENN., May 8, 1885.
"Sold to T. M. Galbreath 15 cars mixed corn, to grade No. 2, for account of C. M. Condon,' Oswego, Kas., at 40 cents per bushel—track—Altamont.
[Signed]        F. H. ELLIS, *Broker.*"

Of this sale by Ellis to plaintiff in error the defendant in error was duly advised; that the corn was paid for by sight drafts as fast as loaded on the cars; that it was of uniform quality. Then follow in the petition the usual allegations of fraud and misrepresentation on the part of the broker, with the knowledge of Condon, and the reliance and payment of the plaintiff in error in consequence of the same. The plaintiff in error then alleges in his petition that, soon after the first five cars of corn arrived at Memphis, he ascertained the kind and quality by the report of the grain inspector, and immediately notified Condon in writing that he would not accept and receive said corn upon the purchase, but would care for it for the defendant in error. Whereupon Condon agreed in writing with the plaintiff in error that, if after all the corn had been received, in justice a rebate ought to be made, it would be done. The writing referred to is as follows:

"OSWEGO, KAS., June 8, 1885.
"*T. M. Galbreath, Memphis, Tenn.:*
"DEAR SIR—On my return home I find your two favors of the 2d inst. If good mixed corn is exactly the same as No. 2, would it not be a good plan to abolish the grade known as No. 2? I do not know why you should draw on me for margins, hence I return the draft. If, after all the corn has been received, justice demands that I allow you a rebate, I

shall do so cheerfully, and send you a draft for the amount agreed upon. I cannot now tell whether you are entitled to any rebate. What is the address of the inspector?

Yours truly, C. M. Condon."

The plaintiff in error attaches an account to his petition showing the details of the transaction, and asks judgment for $1,045.77. The defendant below answered as follows:

"Said defendant, for his answer to plaintiff's amended petition, denies each and every allegation therein contained, except such as are herein expressly admitted. Defendant admits that he authorized F. H. Ellis to sell for him 15 cars of good mixed corn at not less than 40 cents per bushel, to be delivered on railroad track at Altamont, Kas., and alleges that, with full knowlege of said Ellis's authority and instructions by him received from defendant, said plaintiff purchased said amount and kind of corn from defendant, through said Ellis, for which he agreed to pay defendant the sum of 40 cents per bushel, delivered as aforesaid. Defendant alleges that he delivered to said plaintiff 15 cars of good mixed corn on the track at Altamont, Kas., in compliance with his agreement as aforesaid, in the month of May, 1885, for which said plaintiff paid him the contract price, and no more. Wherefore, defendant prays that he may recover his costs herein."

To this answer a general denial was filed as a reply. At the May term, 1889, the cause came on for trial, and the only evidence introduced by the plaintiff in error, to maintain the issues on his part, was his own deposition and that of Ellis, and then put Condon and his attorney, Case, upon the stand to inquire about some letters and telegrams, and rested. The defendant in error then filed a demurrer to the evidence of the plaintiff in error, which was sustained.

It seems from the deposition of Galbreath that, at the time of this transaction, he and one Hooper Harris were equal partners in the grain trade at Memphis, and that Harris was the active partner in the purchase of this grain from the broker. The deposition shows that the partnership was dissolved before this action was brought, and, in the language of the witness, "that this contract was turned over to him." This is sufficient, it seems to us, to enable Galbreath to maintain an

action in his own name, as the contract was in his individual name.

All the material facts of the contract sued upon are in writing. It consists of Condon's letter of May 6, offering to sell "15 cars good mixed corn, 40 cents — track — Altamont. Weather wet and will not guarantee grade." On the 8th of May Ellis telegraphed Condon as follows: "Sold 15 cars good mixed corn — 40 — track — Altamont, brokerage included." The letter of Condon of May 6 was shown by Ellis to Harris, and was also seen by Galbreath at the time the corn was sold by the broker. It will be seen that in the memorandum of sale exhibited in the petition that grade No. 2 was provided for, but as the letter of Condon was shown to both Harris and Galbreath, they put their own construction upon it. In the telegram of Ellis to Condon, stating the sale to Galbreath, no mention is made of No. 2 grade. Galbreath states in his deposition that this memorandum of sale was made several days after he had purchased the corn, and when pressed to fix the exact time he could not be definite. So it seems that under no fair consideration of the terms of the contract can it be said that Condon intended to sell, or that Galbreath intended to buy, corn that would grade No. 2, because in this connection it must be recollected that the corn was to be delivered on the track at Altamont, Labette county, and not at Memphis, Tenn. The contract did not, in terms or by fair implication, provide for an inspection, either at Altamont or in Memphis, and what might be good mixed corn at Altamont would not be No. 2 grade at Memphis. Condon complied with the letter of his contract, as well as the spirit, when he delivered on the track at Altamont good mixed corn. This is all he agreed to do, and, further than this, he said that on account of the wet weather he would not guarantee grade.

Again, the plaintiff in error did not introduce a particle of evidence tending to show the condition of the corn at the place of delivery in Kansas. There is some evidence that it was damp and wet when received at Memphis, but this may

have been produced by the very conditions that prompted Condon to refuse to guarantee grade. He wrote in his letter of May 6 that the weather was wet, and as this was the only reason given by him for his refusal to guarantee grade, and no other reason being shown by the plaintiff in error, it is fair to conclude that the corn became damp and wet in transit.

We think the court below did not commit error in sustaining the demurrer to the evidence of the plaintiff in error, and are strongly impressed with the belief that the result is abstractly right. We recommend an affirmance.

By the Court: It is so ordered.

All the Justices concurring.